FRANCIS WILKES, plaintiff in error, *vs.* SHEROD PHILLIPS, *et al*, defendants in error.

Where a cause has, for many terms, been "continued generally," the Court should not peremptorily dismiss it, because a showing for continuance is insufficient, he should put it on terms, *i. e.* to be tried at the next term, or dismissed. A case dismissed under such circumstances should be reinstated.

Motion to reinstate case. Decided by Judge GIBSON. Emanuel Superior Court, October term, 1867.

Phillips and Wilkes each claimed the tract of land in Emanuel county, which was the subject matter of this cause. Phillips had obtained a verdict, finding that Wilkes was his tenant of the same, holding beyond his term, and was about

Wilkes *vs.* Phillips *et al.*

to turn him out of possession. To prevent this, in April, 1851, Wilkes filed his bill against Phillips and others, to enjoin said proceeding and to set aside a deed for said land to Phillips, which complainant alleged had been procured from him by fraud.

This bill had been tried once, resulting in a verdict for complainant, and stood at April, 1867, on the appeal. Complainant was represented by Judge Hook alone, and he was not at the Court when the case was called. General Wright and Wm. A. Wilkins, attorneys at law, representing Judge Hook, sought to continue the cause. The motion to continue was founded upon the following statement: "That the counsel of record was compelled by an engagement formed soon after his term of office expired, (he had been Judge of the Superior Court of that circuit,) to be present at Hancock Court, in an important criminal case, and that said engagement was probably made before he was aware of the change which had been made in the time of the holding of Emanuel Court by the last Legislature, he having theretofore held the Courts on the first Mondays in April and October, the time then established by law; that his partner had intended to be present, but was prevented and had forwarded the papers to Wm. A. Wilkins, Esq., who received them, but who stated to the Court that he was not familiar with the case, and could not try it, especially, as the complainant, a very ignorant man, had left the Court and gone home under the impression that the case would not be tried in the absence of his counsel, and he could not, without him, learn who the witnesses were, or whether the cause was ready for trial."

This showing being unsatisfactory, the Judge refused the continuance, but permitted them to take a nonsuit, with leave to submit a motion to reinstate, to be argued at the next term.

In presenting the motion to reinstate, the facts aforesaid were reiterated, and in addition thereto the following letter was read:

Wilkes *vs.* Phillips *et al.*

AUGUSTA, October 12th, 1867.

GEN. A. R. WRIGHT:

*Dear Sir*—As I cannot attend Emanuel Court at this term, I furnish this statement in the Wilkes and Sherod equity case, dismissed by Judge Gibson at last term, and motion pending to reinstate.

I was induced to appear in a murder case in Hancock Court, which sits on the second Monday in October, not thinking, or I believe, even knowing, at the time, of the change of Emanuel Court, from first to second Monday. As soon as I ascertained it, I fixed up my papers for Emanuel Court, and placed them in the hands of my partner, Major Carr, with appropriate instructions in each case, and he got ready to go, but was, on the very eve of his departure, prevented by a circumstance unnecessary to refer to, but controlling in its nature, when he did the next best thing he could, and forwarded the papers to Col. Wilkins, with the request that he would represent us,

The haste and pressure of the defendant exhibited last term, when I was absent, was not to be expected, in view of the fact that during the war, and while I was on the bench, I always sounded the case, and gave Mr. Shewmake an opportunity to have a trial, saying to him that he could either have a Judge, if he desired it, or select a disinterested attorney and let him try the case, and Mr. Shewmake, according to my recollection, never pressed for or showed an anxiety to have a trial even. And my recollection further is, that on several occasions when the case was continued, "generally," it was to oblige my brother Shewmake and his clients. There are the strongest reasons why this case should not be dismissed independent of the war, and *other circumstances, which should appeal strongly* to the sound discretion of the Court to retain it. There is the important fact that twelve special Jurors of Emanuel County, have given Wilkes a decree in his favor, sustaining the charges of fraud made in his bill against the defendants.

I have no officer present before whom to make my affirmation of the truth of the foregoing, but hereby state that the facts herein set forth are, to the best of my knowledge, remembrance and belief, true in every substantial particular, and this I say "in my place" as an attorney at law.

Yours very truly,

JAS. S. HOOK.

The Court refused to reinstate the case, and this refusal is assigned as error.

HOOK, for plaintiff in error.

SHEWMAKE, for defendant in error.

HARRIS, J.

As far back as the year 1851, it appears that the plaintiff in error commenced his suit in equity, to set aside a deed, as having been fraudulently procured from him, and, upon the trial of the case, a decree was rendered in his favor. The defendant entered his appeal, and, during the war, the appeal was continued, by consent, from term to term, until the solicitor of complainant, Mr. Hook, was elevated to the bench. Judge Hook was on the bench from February, 1863, to the Spring term of 1867. During which period, no effort appears to have been made, by appellant, to procure a trial, the Judge offering, at all times, to obtain the services of another Judge, whenever the parties were ready. At October term, 1867, the solicitor of complainant having returned to practice at the bar, was, in the discharge of professional duty, called to another Court; but was represented in Emanuel, where this cause was pending, by General A. R. Wright, and other lawyers, who sought to have it continued on various grounds, amongst which was the absence of the complainant, an illiterate, ignorant old man, who came to the Court on the first day of the session; but who, through mistake, or under the idea, as his solicitor was not in attendance, that the case would not be tried, left the Court, for his home in the country, and did not return; and that, without his presence, the counsel representing Mr. Hook, could not safely go to trial. The motion to continue, upon all the grounds, was overruled by the presiding Judge.

That all causes should be brought to trial, at as early a period as practicable, without producing injustice, will be conceded to be desirable; and this might be accomplished by a Court setting its face sternly against that loose practice, which obtains, in most of the circuits, of tolerating what are termed "general continuances." When closely scrutinized, they are frauds on the law, and are productive of immense evil. If these were cut up by the root, permitted, under no circumstances, cases could not be spun out until, like this, they become hoary with age. But, when a practice has been

established, by long usage, it should not, however objectionable in itself, be suddenly arrested, and, thereby, made to work an injustice. A change of practice should be made to operate prospectively. That this case had lingered *too long* on the docket, is undeniable; but, having thus lingered, and been taken without the rules of law, by repeated general continuances, the case should not have been dismissed, notwithstanding the insufficiency of the grounds on which a continuance was asked, *but should have been placed under a rule,* entered on the minutes to try at a subsequent term, or dismiss. It would have been a proper rule to have been made at the instance of a party who desired the litigation to be brought to an end. Such rules should be made by the Judges themselves, with a view to the proper disposition of the business of the Court.

The question properly before the Judge below, for decision, was not the sufficiency of the showing for continuance; *but what did the ends of justice,* in a case so old, and which had been prolonged from term to term, for so many years, *without any readiness whatever, to try by either party,* having been exhibited, *require of him,* in the exercise of a discretion, for a case not within any prescribed rule. Did the ends of justice require that an ignorant old suitor, who had been wronged by a fraud, should be mulcted in the costs, by the dismissal of his bill in equity, and be obliged to commence again, and go over a tedious course, before he could hope to reach the same point at which his case stood, simply because he had left the Court under the circumstances mentioned? We think not. If there was fault anywhere, it was not with him. But even had he been present, and not prepared, fully, to try, he should not, from the past history of the case, *been forced then to try,* but been placed under rule to try at a subsequent term, or dismiss. The defendant, by the verdict of a special jury, had beed pronounced to be a wrong doer, presumptively, therefore, he *was* one. He was represented by able and vigilant counsel, who was in attendance. That counsel must have perceived the great advantage that he had,

in going to trial at that time.   He was bnt performing his duty, in availing himself of whatever advantage the law gave him.

Seeing this, and the whole matter being within the control of the Judge, in the exercise of a sound discretion, he should not have dismissed plaintiff's suit.   Let it be reinstated.

Judgment reversed.