## MARTIN v. DAVIS & COMPANY.

Though, under some of the decisions of this court, advances of supplies furnished for the purpose of enabling the person receiving the same to make crops are "in the nature of purchase-money" of such crops, or to be regarded as "material furnished therefor," so as to prevent a subsequent exemption thereof from becoming valid as against a judgment in favor of the party making the advances for the amount of the price of the supplies so furnished, it does not result that, where a husband and father, after a homestead in land has been set apart to him, individually mortgages growing crops thereon in order to obtain supplies to be used in making such crops, the holder of this mortgage can by foreclosing it against the mortgagor as an individual, after the maturity of these crops, subject the same to the satisfaction of the mortgage execution. Under such circumstances, the crops are not subject to such execution.

Argued April 28, — Decided May 27, 1898.

Levy and claim — certiorari. Before Judge Butt. Harris superior court. April term, 1897.

*C. J. Thornton* and *A. E. Thornton*, for plaintiff in error.
*Cameron & Hargett*, contra.

LITTLE, J. On January 12, 1869, the ordinary of Harris county, acting on an application filed by Milner Martin, approved and set apart for the benefit of Milner Martin's family a homestead in 354 1/2 acres of land, more or less, situated in Harris county and belonging to Milner Martin, together with certain personal property scheduled in the application. On the 18th day of April, 1895, while the homestead so set apart was yet subsisting, Martin executed in favor of Robert Davis & Co. an instrument in which it was recited: "I have purchased of Robert Davis & Co. the amount of eighty dollars, and have bargained for such other advances as I may need to make a crop during the year 1895, which sums advanced and to be advanced I owe to said Robert Davis & Co., and promise to pay them the first day of October, 1895. Now, in consideration of said purchase and in order to secure the payment of said amounts, I do hereby bargain, sell and convey unto the said Robert Davis & Co., heirs and assigns, the following property, to wit: my entire crop of cotton, corn, fodder, peas, and cottonseed, raised by myself and family and tenants on my place in Harris county, State of Georgia, and I agree to deliver to Robert Davis

& Co. my cotton as fast as picked out and ginned until all claims is paid. To have and to hold, with all appurtenances, to said Robert Davis & Co., their heirs and assigns forever. And I do warrant the title to said property to the said Robert Davis & Co., heirs and assigns, against the claim of all persons whatever; and I also waive and renounce all right to homestead and exemption in and to said property in favor of said Robert Davis & Co., heirs and assigns. Provided, if I pay said sums on the day they become due, with interest thereon at 8 per cent., from October the first, and all lawyers' fees for collecting, then this mortgage and waiver shall cease and be void. And I the said M. Martin hereby declare that the above-conveyed property is my own, and that there is no lien or incumbrance upon the same except————. In witness whereof," etc. Signed, "M. Martin [L. S.]," witnessed by Jerry E. McKersy, J. H. Harrison, J. P. On November 5, 1895, the above mortgage was, on the affidavit of Robert Davis, foreclosed before a justice of the peace, and execution at once issued against the produce described therein. On December 28, 1895, this execution was levied on the property described in the mortgage; whereupon Milner Martin, as the head of a family, interposed a claim to the property levied upon under the execution, and in support of this claim introduced in evidence at the trial in the justice's court the homestead papers heretofore referred to. On the trial of the issue raised by the claim interposed by Martin, the justice rendered judgment in favor of the claimant. The plaintiffs took the case to the superior court by certiorari, alleging, in substance, that the judgment of the magistrate was erroneous, because the debt upon which the execution was founded was for materials and necessaries furnished to improve the homestead and to make a crop, and in the nature of purchase-money, and the homestead was, therefore, subject to the execution. The superior court sustained the certiorari and remanded the cause to the justice's court for a rehearing. The claimant excepted to this judgment of the superior court; and this court is now called upon to determine whether in sustaining the certiorari and remanding the cause for a rehearing the judge of the superior court committed error.

It will be noted that the plaintiffs in execution concede the setting apart and subsistence of the homestead, but. contend that the crops, the product of the land so set apart as a homestead for the benefit of the wife and minor children of Martin, are, under the law of this State, subject to the satisfaction of their execution. The sole question, therefore, for determination by this court is, whether the crops grown on land which has been duly and regularly set apart as a homestead are subject to an execution issued on the foreclosure of a mortgage executed individually by the head of the family to secure certain advances made after the homestead was set apart, and alleged to have been made to enable such mortgagor to produce the crops levied on. To sustain the affirmative of the proposition, we have been referred to certain decisions heretofore rendered by this court. The first is that of *Tift* v. *Newsom*, 44 *Ga.* 600, decided by two Judges. In that case advances were made to Newsom for the payment of the labor and other current expenses of a plantation, and for which Newsom gave to the Messrs. Tift a factor's lien upon the then-growing crop, etc. This lien was foreclosed and the fi. fa. issuing therefrom levied upon a part of the crop. To this levy the wife of Newsom interposed her claim, and on the trial of the issue thus raised the evidence showed that an exemption, which included the part of the crop levied on, was allowed to her under the homestead laws after the factor's lien was given. The second of the cases cited is that of *Stephens* v. *Smith*, 62 *Ga.* 177, where an open account for supplies furnished during the year 1877 to enable the purchaser to make his crop was sued to judgment. It was held that the lien created by this judgment was superior to an exemption of the same property allowed after the rendition of the judgment. The remaining case to which we have been referred is that of *Cook* v. *Roberts*, 69 *Ga.* 742, ·in which this. court ruled the same principle as announced in the cases above referred to. In all of those cases it appears that the exemption was allowed subsequently to the creation of the debt and the giving of the lien or the rendition of the judgment. The two cases first mentioned were adjudicated under the laws in force prior to the adoption of the constitution of 1877. The

decision in the last case fails to disclose the date of the creation of the lien. It is fair to infer, however, that the transaction arose subsequently to the adoption of the constitution of 1877. However, this may be, it must be admitted that those cases clearly rule that supplies and provisions furnished to make a crop, when secured by a lien, or reduced to judgment, are in the nature of "purchase-money" or "material furnished" for the crops so raised. It is not necessary, in adjudicating the case now under review, for us to go into the question as to whether, under existing law, such crops are so subject. In the case at bar the sole question is, whether the crops made on homestead land are subject to an execution issued on the foreclosure of a mortgage given thereon by the head of the family. It will be noted that the homestead was set apart in the year 1869, on the application of the plaintiff in error, for the benefit of his wife and minor children, while the mortgage upon which the execution issued was dated April 18, 1895, signed by M. Martin, and purported to create a lien on "my entire crop of cotton, corn, fodder, peas, and cottonseed, raised by myself and family and tenants on my place in Harris county, State of Georgia."

It is not an open question in this State as to the right of the debtor to encumber exempted property. In section 2848 of the Civil Code it is provided that: "All produce, rents or profits arising from homesteads in this State shall be for the support and education of the families claiming said homesteads; and shall be exempt from levy and sale, except as provided in the constitution." While article 9, section 2, paragraph 1 of the constitution provides that property set apart as a homestead is not exempt from claims for taxes, for the purchase-money of the same, for labor done thereon, for material furnished therefor, or for the removal of encumbrances thereon, it is further provided, in paragraph 1 of the 3d section of the same article of that instrument, that the debtor shall not, after the homestead is set apart, alienate or encumber the property so exempted. Construing this paragraph of the constitution, Mr. Justice Simmons, delivering the opinion of the court, in the case of *Planters' Bank* v. *Dickinson*, 83 *Ga.* 711, uses this language: "When the wife dies and the children become of age, the use ceases,

and if the husband is still living at that time, he becomes rein-
vested with all the rights which he had before the homestead
was set apart.   He can then sell or mortgage at his pleasure.
But so long as the homestead estate remains, he can not sell
without the consent of his wife, nor without an order from the
judge of the superior court; nor, as we now think, can he mort-
gage it with the consent of his wife and with an order of the
judge of the superior court." As to the demands from which the
constitution declares homestead property not to be exempt, this
court, in the case of *Willingham & Dunn* v. *Maynard*, 59 *Ga.*
330, held that "before a homestead can be made subject to pay
a debt within the character of claims for which it is subject by
the exceptions of the constitution, the suit must be brought
as against any other trust property, and the declaration and
pleadings must so set it out; that is to say, the pleadings must
show the grounds of the claim, and how and in what manner
the trust property is liable to the debt, and the names of the
trustee and cestui qui trust." With respect to all such property
as may be set apart under the homestead and exemption laws
of this State, the head of the family holds the same, during
the life of the wife and the minority of the children, as trust
property.   As was said in the case of *Planters' Bank* v. *Dickin-
son*, supra, the title of the land set apart is not changed, but it
remains in the husband, but a new use of the property is cre-
ated by the judgment of the ordinary setting apart the same
as a homestead.   Whenever it is sought to bring any part of
such homestead to sale under a claim or debt for which it is
contended the homestead is liable, such must be done in the
manner provided by section 3203 of the Civil Code, or by a com-
pliance with the provisions of the act of 1871, as codified in
section 2850 of the Civil Code.   The effort in the present case
was to enforce an execution issued on the foreclosure of a mort-
gage made by Martin in his individual capacity, which is clearly
against both the letter and spirit of the clause of our constitu-
tion cited supra; and the judgment of the court below in sus-
taining the certiorari must be

*Reversed.   All the Justices concurring.*